JOE D. MERRITT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Merritt v. Commissioner
Docket No. 26879-81
United States Tax Court
T.C. Memo 1983-218; 1983 Tax Ct. Memo LEXIS 562; 45 T.C.M. (CCH) 1368; T.C.M. (RIA) 83218; April 25, 1983. Joe D. Merritt, pro se. Danny M. Carr, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: In a notice of deficiency dated August 3, 1981, respondent determined a deficiency of $56,417.90 and additions to tax of $28,208.95 under section 6653(b) [1] and $1,805.37 under section 6654 for the calendar year 1978. The deficiency and additions to tax were based upon sale by petitioner of the Joe Merritt *563 Insurance Agency in 1978 for the sum of $230,000. In his petition filed herein, petitioner alleged, among other things, that "[t]he Commissioner has erroneously and wrongfully considered the capital asset to have been a property of Joe D. Merritt as an individual when in fact the agency was a capital asset property of a tax exempt church." Subsequent to filing the petition, representing himself, petitioner filed a reply; propounded written interrogatories to respondent; unsuccessfully moved to set aside a protective order (made with respect to the proposed interrogatories); and successfully moved to vacate the other assigning case for trial before a special trial judge. Petitioner did not, however, appear at trial. [2] Respondent moved for dismissal of the petition for failure to properly prosecute and presented evidence with respect to the addition to tax for fraud under section 6653(b). Respondent's motion will be granted as to the deficiency and the mandatory addition to tax under section 6654, and this opinion deals *564 solely with the addition to tax under section 6653(b), as to which respondent has the burden of proof. See Rules 123, 142(b), and 149, Tax Court Rules of Practice and Procedure.
FINDINGS OF FACT At the time he filed his petition herein, petitioner was a resident of Central Lake, Michigan. Petitioner filed tax returns for the years 1975, 1976, and 1977, reporting, among other things, gross receipts of $66,638, $76,918.18, and $34,377.53, respectively, from the Joe Merritt Insurance Agency. Petitioner did not file a Federal income tax return for the year 1978. On or about January 24, 1978, petitioner entered into a written Agreement of Sale and Purchase, by which petitioner, as seller, sold to Commercial Underwriters, Inc., as purchaser, for the sum of $230,000, all of the accounts of insurance of Joe Merritt Insurance Agency; the assumed name of Joe Merritt Insurance Agency; and filing cabinets, transfer cases and office record containers containing the records of the agency. Paragraph 7 of the *565 agreement provided in part: The PURCHASER shall pay the purchase price to the SELLER in the following manner with allocations as designated: Total Purchaser Price
$230,000.00
Less Earnest Money Deposit
on the Execution of this
Agreement as receipted
hereinafter
5,000.00
$225,000.00
Less Balance of down payment
on or prior to January 31,
1978, being the consummation
date of the sale/purchase
20,000.00
$205,000.00
Less money held in escrow at
closing by JOHN J. OCHMAN
to be paid to SELLER no later
than February 28, 1978, when
the files of SELLER'S AGENCY
are all in the physicial custody
of PURCHASER.
25,000.00
$180,000.00
Unpaid balance to be paid in quarterly installments of Nine Thousand ($9,000.00) Dollars, plus interest at a rate of 7 1/2% on the unpaid balance. First payment to commence on May 1, 1978 and continue quarterly until the entire principal balance and interest thereon is fully paid. The unpaid balance shall be secured by a Promissory Note payable to the SELLER, JOE D. MERRITT, individually, provided however that he is the sole owner of said business entity, such payment shall be in accordance with the express written *566 direction of the SELLER prior to the closing of this transaction. and the PURCHASE is made in the following manner: Covenant not to Compete as
Expressed herein (50%)
$115,000.00
Balance of Sale Price (50%)
115,000.00
$230,000.00
Attached to the agreement is a Covenant Not To Compete as follows: Now comes, JOE D. MERRITT, d/b/a JOE MERRITT INSURANCE AGENCY, and covenants and agrees as follows: 1. That as a result of the consummation of the sale of the assets of JOE MERRITT INSURANCE AGENCY, that he will not engage in an insurance agency representation business, either as agent or solicitor for any insurance company, insurance agency or related activity for a period of five (5) years and in the counties of Wayne, Oakland, Macomb, Washtenaw and Livingston, in the State of Michigan, except as solicitor in the employ of the Purchaser. /s/ Joe D. Merritt Joe D. Merritt Pursuant to said agreement, petitioner received the following payments during the taxable year 1978: Principal
Interest
Total
January 24, 1978
$ 5,000.00
$ 5,000.00
January 26, 1978
45,000.00
45,000.00
April 25, 1978
9,000.00
3,375.00
12,375.00
August 1, 1978
9,000.00
3,206.25
12,206.25
November 1, 1978
9,000.00
3,037.50
12,037.50
Total
$77,000.00
$9,618.75
$86,618.75
*567 Four checks, comprising the payments made on January 26, April 25, and August 1, 1978, were endorsed "Joe Merritt." The check representing the payment made November 1, 1978, was payable to Joe Merritt and was endorsed "For Deposit only to account of the Life Science Church -- Joe Merritt." On or about September 21, 1978, petitioner executed a form "VOW OF POVERTY" by which he purportedly made "an irrevocable gift of all my possessions, real, personal and otherwise and all my income whatsoever" to an order of the Life Science Church. On or about February 9, 1979, petitioner executed and recorded with the Register of Deeds of Antrim County, Michigan, a document whereby he purported to assign to the Life Science Church of Antrim the contract between petitioner and Commercial Underwriters, Inc., for sale of the assets of Joe Merritt Insurance Agency.
The agreement for sale of Joe Merritt Insurance Agency to Commercial Underwriters, Inc., was negotiated between petitioner and Anthony J. Gray, President of Commercial Underwriters, Inc. During the negotiations, petitioner never mentioned to Mr. Gray that petitioner was acting on behalf of some entity other than himself. Subsequently, *568 however, after some of the payments pursuant to the agreement had been made, petitioner requested Mr. Gray to send future quarterly installments to his church rather than to him personally. Mr. Gray declined that request and stated that Commercial Underwriters, Inc., would continue making the payments to petitioner.
During 1980, respondent commenced an audit of petitioner with respect to the year 1978. During the course of the audit, petitioner was interviewed by revenue agent Evaggelos N. Rumanes. Petitioner stated to Mr. Rumanes that he was not required to file a tax return for 1978 because he was a minister for the Life Science Church. With respect to other questions, petitioner asserted a Fifth Amendment privilege against self-incrimination. Information concerning the sale of the insurance agency was obtained by Mr. Rumanes without the assistance of petitioner. In his reply filed in this case, petitioner "admits having knowledge of an individual's filing requirements but denies having any obligation to file a 1978 income tax return." Petitioner has not offered any explanation for his failure to file other than his contention that the agency was an asset of the church. *569 OPINION In his petition, petitioner alleged that respondent had determined the "50 percent civil fraud penalty solely in retaliation for pertitioner's claim and exercise of his 5th Amendment Constitutional right to remain silent." The evidence presented by respondent at trial of the fraud issue, however, primarily the Agreement of Sale and Purchase, the checks for payments received by petitioner in 1978, the testimony of Mr. Gray, and the testimony of Mr. Rumanes clearly and convincingly establish fraud. See section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Stephenson v. Commissioner,79 T.C. 995, 1005-1008 (1982). The documentation evidencing sale of petitioner's insurance agency shows petitioner as the seller and as the recipient of the payments made. The claim that the asset was sold by the church is clearly an afterthought. The purported Vow of Poverty was apparently executed only after petitioner had received four payments, totaling $68,000. Even if the agency had been in the name of the church, the covenant not to compete, to which half of the consideration was allocated, could reasonably only be interpreted as a promise by the *570 individual who had successfully operated the agency in prior years. The purchaser of the agency obviously was not interested in paying $115,000 for a noncompetition promise by a church, the existence of which was unknown to the purchaser. Petitioner evidenced, through his prior years' filings, and admitted his knowledge of an individual's obligation to file tax returns. He also stated in his reply that "should Respondent believe the allegations of 8(h), (i) and (j) [of the answer] be, indeed, true and correct, petitioner alleges that Respondent has a lawful duty to prosecute this case under Section 7201 of the Internal Revenue Code." Those paragraphs read as follows: (h). The petitioner's sole purpose in forming a religious organization and executing a vow of poverty more than seven months after the sale of his insurance business was to evade his income tax liability. (i). The petitioner's failure to file a return, report the payments received under the sales agreement and pay the tax owing thereon for the taxable year 1978 was fraudulent with intent to evade taxes. (j). A part of the underpayment of tax required to be shown on the petitioner's *571 return for the taxable year 1978 is due to fraud. The evidence presented establishes that those allegations are, indeed, true and correct. While we disagree that respondent has a "duty to prosecute" under these circumstances, we interpret petitioner's statement as a concession as to the effect of proof of the facts alleged by respondent, to wit, that they evidence an intent to evade or defeat the tax. See section 7201. The same criteria applies to the additions to tax under section 6653(b), and the additions to tax are totally appropriate under the facts of this case. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
2. Respondent's counsel stated that respondent had been unable to locate petitioner during the prior 6 months and that mail sent to petitioner had been returned undelivered.↩